SHARON CREECH AND TRAVIS CREECH, GUARDIANS AD LITEM OF JUSTIN CREECH, MINOR, PLAINTIFFS-APPELLANTS V. EVELYN H. MELNIK, M.D., DEFENDANT-APPELLEE

No. COA95-1370

(Filed 19 November 1996)

1. Contracts § 26 (NCI4th)— medical malpractice—promise of attorney not to sue—implied contract

The trial court properly granted summary judgment for defendant on a breach of implied contract claim in a medical malpractice action arising from the delivery of a baby where defendant, a neonatologist who had resuscitated the child at birth, felt assured after talking with plaintiffs' attorney that she was not a potential defendant and provided information concerning the child's care as set out in the medical records and the standard of care for such an infant, and an action was ultimately brought against her. The uncontroverted facts support a finding of mutual

assent and consideration sufficient to warrant the conclusion that an implied contract was formed and that plaintiffs breached that contract by bringing suit against defendant. Although the attorney contends that he was not promising to refrain from suing defendant at some point in the future should further investigation reveal that she was liable, an attorney's carefully chosen words do not necessarily prevent the formation of an implied contract not to sue. Whatever the attorney's intention, defendant could reasonably interpret his actions as a promise not to sue and the trial court correctly concluded that defendant provided plaintiffs with valuable information in reliance on the attorney's assurance that she would not be sued.

**Am Jur 2d, Contracts §§ 12-15.**

2. **Estoppel § 25 (NCI4th)— medical malpractice—promise of attorney not to sue—equitable estoppel**

The trial court did not err in a medical malpractice action arising from the birth of a child by granting summary judgment for defendant on equitable estoppel where plaintiffs' attorney initially assured defendant-doctor that she was not a potential defendant, she talked with plaintiff's attorney on several occasions about the case, and an action was eventually brought against her. The doctor relied on the plaintiffs' attorney's representation and provided assistance interpreting the medical records and other information which made it possible for plaintiffs to maintain a successful suit against the hospital and other defendants. Clearly, defendant would be prejudiced if plaintiffs are allowed to maintain the suit after initially representing, at least by implication, that she would not be sued.

**Am Jur 2d, Estoppel and Waiver §§ 26-34.**

Judge JOHNSON dissenting.

Appeal by plaintiffs from order entered 8 June 1995 by Judge William C. Gore, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 11 September 1996.

*Law Offices of Wade E. Byrd, by Wade E. Byrd and Mary Ann Tally, for plaintiffs-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson, William H. Moss, and James Y. Kerr, II, for defendant-appellee.*

WYNN, Judge.

At approximately 2:00 p.m. on 23 September 1980, Southeastern General Hospital in Lumberton, North Carolina urgently called the defendant, Dr. Evelyn H. Melnik, to assist in the delivery of twins born to the plaintiffs, Sharon and Travis Creech. At the hospital, Dr. Melnik, a neonatologist, resuscitated Justin Creech and determined that his APGARS (initial birth assessment) were very low. Once stabilized, Justin was transferred to the nursery for admission.

The record on appeal indicates that standard protocol at the hospital called for the attending pediatrician to be notified immediately upon an infant's admission to the nursery. A nurse wrote admitting orders for Justin, and the medical records reveal that at 4:20 p.m. the attending pediatrician, Dr. Elwood Coley, was notified of a decrease in Justin's blood pressure. The medical records further reveal that following the delivery, Dr. Melnik had no further involvement in Justin's care until early the next morning when she was called to the nursery to provide resuscitation to Justin. At approximately 7:30 a.m. on 24 September, Justin's care was transferred from Dr. Coley to Dr. Melnik.

In March of 1988, plaintiffs' attorney, W. Paul Pulley, contacted Dr. Melnik and informed her that plaintiffs were considering bringing a medical malpractice action against the health care providers involved in Justin's delivery. He stated that he was having difficulty understanding the medical records and wished to retain her to assist him in interpreting the records. During this initial conversation, Dr. Melnik asked Mr. Pulley whether she was a potential or possible defendant. Apparently, from his response, she felt assured that plaintiffs would not sue her.

Mr. Pulley and Dr. Melnik subsequently met and communicated by telephone regarding this case on several occasions over the next few months. During that time, she provided information regarding Justin's care as set forth in the medical records, as well as regarding the standard of care for treating an infant in Justin's situation. The medical records showed that no blood gases had been taken on Justin until 7:00 p.m. on the day he was born. As a result, Justin was not given sufficient oxygen causing him to suffer from neonatal asphyxia. Dr. Melnik expressed the opinion that Justin's pediatric care had been substandard the first few hours after his birth, and this would have contributed to his severely handicapped condition. Dr. Melnik further

CREECH v. MELNIK

[124 N.C. App. 502 (1996)]

stated that Dr. Coley was responsible for Justin's care during those hours.

As the investigation progressed, Dr. Melnik continued to have contact with and provide information to Mr. Pulley. The focus changed, however, when during a deposition on 13 July nurse Jean Reeves pointed out that Dr. Melnik may have been the person responsible for Justin's care in the first few hours after his birth.

Plaintiffs contend that following Ms. Reeves' deposition, Mr. Pulley contacted Dr. Melnik and informed her that she had potential malpractice exposure and advised her to retain an attorney. On the other hand, Dr. Melnik contends that Mr. Pulley had several subsequent information gathering conversations with her after he became aware that she was a potential defendant, and did not notify her that she was a potential defendant and should retain an attorney until after she was subpoenaed for a deposition. She also notes that there is no contemporaneous documentation of Mr. Pulley's alleged conversation on this matter in contrast with the extensive notes made by Mr. Pulley of his other conversations with Dr. Melnik.

On 12 October 1990, the plaintiffs filed suit against Dr. Melnik. After answering the complaint, Dr. Melnik moved for and was granted summary judgment based on the affirmative defenses of breach of implied contract not to sue and equitable estoppel. Plaintiffs appeal from this order.

On appeal, plaintiffs ask us to consider whether the trial court erred in granting summary judgment for defendant on the grounds of breach of contract and equitable estoppel. Because we find that summary judgment on both grounds was proper, we affirm the judgment of the trial court.

## I. Breach of Contract

[1] Plaintiffs contend the trial court erred in granting summary judgment for defendant on the grounds that they breached an implied contract not to sue. We disagree.

As an initial matter, we note that the law of agency applies to the relationship between a client and his attorney. *Bank v. McEwen*, 160 N.C. 338, 342, 76 S.E. 222, 224 (1912). Thus, the client is bound by the acts of his attorney within the scope of his authority. *Id.* Since neither party addresses the question of whether the attorney under the facts of this case could lawfully bind his clients to a contract, we need not

reach that issue in this appeal. Therefore, we proceed to consider the question of whether the course of conduct between the parties in this case gave rise to a valid implied contract.

A contract implied in fact arises where there is no express intention of the parties, but an agreement creating an obligation can be implied or presumed from their acts. *Snider v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980). "An implied contract is valid and enforceable as if it were express or written." *Id.* A validly formed contract requires mutual assent and consideration.

The record in this case reveals that Mr. Pulley initiated the contact with Dr. Melnik. Before providing any information, Dr. Melnik specifically asked Mr. Pulley whether she was being looked at as a defendant. In his deposition, Mr. Pulley stated: "I did at some point tell her that I wasn't looking at her. I didn't know of any reason for her to be a defendant in this action. . . . [I]t's not entirely incorrect that I did give her assurances that we had no interest in making her a defendant." Apparently, Dr. Melnik relied on Mr. Pulley's representations and provided valuable information regarding Justin's care.

Mr. Pulley contends that by telling Dr. Melnik that he had no reason to consider her as defendant in light of the information he had at that time, he was not promising to refrain from suing her at some point in the future should further investigation reveal that she was potentially liable. Therefore, he argues that since there was no mutual assent, no contract was formed and the suit against Dr. Melnik does not constitute a breach of contract.

We find, however, that an attorney's carefully chosen words do not necessarily prevent the formation of an implied contract not to sue. When finding mutual assent between the parties, "[t]he undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962) (quoting 17 C.J.S. *Contracts* § 32).

In the subject case, the trial court found that Mr. Pulley represented, "or at least said words from which the Defendant could have reasonably inferred" that he was promising not to sue. We agree. Even a cursory examination of the medical records in this case reveals that Dr. Melnik was not a disinterested third party whose only contribution would be an impartial review of the medical records in the case. Rather, the medical records show that Dr. Melnik had been

CREECH v. MELNIK

[124 N.C. App. 502 (1996)]

directly involved with Justin's care and could potentially provide information which would lead to liability.

An attorney has an ethical obligation to be honest and forthright in his dealings with all those involved in the case he is investigating. Because a layperson could reasonably be expected to rely upon an attorney's assurances, he must not, by words or actions, deceive those with whom he comes in contact. Whatever Mr. Pulley's intention may have been with regard to his assurance to Dr. Melnik that she was not being considered as a defendant in the case, Dr. Melnik could reasonably interpret his actions as a promise not to sue.

When finding consideration, this Court has held that "there is consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." *Bank v. Insurance Co.*, 42 N.C. App. 616, 621, 257 S.E.2d 453, 456 (1979). The trial court found, based on the uncontroverted facts that:

> [T]here was consideration given in the information and opinions provided by Dr. Melnik to the Plaintiffs' counsel, which reason and common sense dictate would not have been provided had she had any idea she would be sued. And, that she was, in fact paid for her involvement and participation in the preparation of the case for Plaintiffs, although the Court believes that the payment was purely and completely for the time expended by Dr. Melnik in her evaluation and review of the records. Nevertheless, the Court believes that sufficient consideration was present to establish a contract.

After examining the record, we agree with the trial court that Dr. Melnik provided plaintiffs with valuable information in reliance on Mr. Pulley's assurance that she would not be sued. Since the uncontroverted facts support a finding of mutual assent and consideration sufficient to warrant the conclusion that an implied contract was formed, and the plaintiffs breached that contract by bringing suit against the defendant, we hold that the trial court appropriately granted summary judgment for defendant.

## II. Equitable Estoppel

[2] Plaintiffs also contend the trial court erred in granting summary judgment for defendant on the grounds of equitable estoppel. We disagree.

**CREECH v. MELNIK**

[124 N.C. App. 502 (1996)]

Our Supreme Court has stated that equitable estoppel arises when:

> [O]ne by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relied and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Bank v. Winder*, 198 N.C. 18, 20, 150 S.E. 489, 491 (1929). Equitable estoppel is a question of law to be decided by the court where only one inference may be drawn from the undisputed facts of the case. *Fireman's Fund Ins. Co. v. Williams Oil Co.*, 70 N.C. App. 484, 487, 319 S.E.2d 679, 680 (1984).

An examination of the record in this case reveals that there is no dispute that Mr. Pulley initially represented to Dr. Melnik that he "didn't know of any reason for her to be a defendant in this action." Dr. Melnik apparently relied upon that representation and provided assistance interpreting the medical records and other information which made it possible for the plaintiffs to maintain a successful suit against the hospital and other defendants. Clearly, Dr. Melnik would be prejudiced if plaintiffs are allowed to maintain the present suit after initially representing, at least by implication, that she would not be sued. Accordingly, we conclude that the trial court properly granted summary judgment for defendant on the basis of equitable estoppel.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Judge LEWIS concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I respectfully dissent from the majority's opinion which affirms the trial court's grant of summary judgment for defendant on the basis of breach of contract and equitable estoppel.

I find that there is a genuine issue of material fact as to whether a reasonable person could and should assume that they are shielded from exposure to potential liability in a medical malpractice action. In this action, more than one inference may be drawn from the facts. Moreover, the facts are disputed as to whether it was reasonable for Dr. Melnik to assume that Mr. Pulley's statements could be considered as an implicit contract not to hold her liable. Accordingly, "[i]f the evidence in a particular case raises a permissible inference that the elements of equitable estoppel are present, but other inferences may be drawn from contrary evidence, estoppel is a question of fact for the jury." *Miller v. Talton*, 112 N.C. App. 484, 488, 435 S.E.2d 793, 797 (1993). Therefore, I vote to reverse and remand the case for trial.