SHARON CREECH AND TRAVIS CREECH, GUARDIANS AD LITEM OF JUSTIN CREECH, PLAINTIFFS v. EVELYN H. MELNIK, M.D., DEFENDANT

No. COA00-717

(Filed 4 December 2001)

**1. Appeal and Error— contract on behalf of a minor—law of the case doctrine**

The law of the case doctrine does not preclude the Court of Appeals' consideration of the issues of whether plaintiff's attorney had authority to contract on behalf of the minor and whether the alleged contract on behalf of the minor required court approval in a medical malpractice action, because: (1) neither of the two prior appellate opinions in this same case addressed either of these issues; and (2) the prior appellate decisions only established that defendant doctor was not entitled to summary judgment.

**2. Minors— implied contract—covenant not to sue—medical malpractice—court approval required**

The trial court erred in a medical malpractice action by allowing the jury to find that there was a valid contract on behalf of a minor not to sue defendant doctor, because: (1) neither the record on appeal nor the brief on behalf of the doctor points to any evidence showing that the alleged implied contract on behalf of the minor was reviewed or approved by the trial court; and (2) it is well-established in North Carolina that a covenant not to sue negotiated for a minor is invalid without investigation and approval by the trial court.

Appeal by plaintiffs from judgment entered 4 August 1999 by Judge Henry V. Barnette, Jr. in Superior Court, Columbus County. Heard in the Court of Appeals 25 April 2001.

*Wade E. Byrd for the plaintiffs-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. by James Y. Kerr, II, Samuel G. Thompson, William H. Moss for the defendant-appellee.*

WYNN, Judge.

Previously, our courts discussed the facts of this case in *Creech v. Melnik,* 347 N.C. 520, 495 S.E.2d 907, (1998) *(Creech II); Creech v. Melnik,* 124 N.C. App. 502, 477 S.E.2d 680 (1996) *(Creech I).* In brief, Sharon and Travis Creech, in their capacities as guardians *ad litem,* brought a medical malpractice action against Dr. Evelyn H. Melnik, M.D., alleging that she provided negligent birthing treatment to their son, Justin, on 12 October 1980.

Dr. Melnik, a neonatologist, directed the newborn nursery at the hospital where Justin was born. Justin's birth began with unstable vital signs necessitating care in the intensive care nursery. Indisputably, oxygen deprivation caused Justin to suffer brain damage, blindness, quadriplegia, cerebral palsy, profound mental retardation, and microcephaly. Plaintiffs alleged that after Justin's admission to intensive care, his condition was significantly worsened by Dr. Melnik's failure to properly care for him from 2:30 p.m. to 4:30 p.m. on 23 September 1980.

Before filing this action, W. Paul Pulley, Jr., plaintiffs' attorney, talked with Dr. Melnik on several occasions. Dr. Melnik contended

CREECH v. MELNIK

[147 N.C. App. 471 (2001)]

that during those conversations, Mr. Pulley assured her that if she spoke with him concerning the events surrounding Justin's birth, plaintiffs would not sue her. She stated that with that assurance, she gave information and opinions concerning the care provided for Justin.

Based on evidence of that assurance, the trial court granted summary judgment in favor of Dr. Melnik under the affirmative defenses of equitable estoppel and breach of implied contract not to sue. This Court affirmed, *see Creech I*; however, our Supreme Court remanded the action for trial to resolve genuine issues of material fact that precluded summary judgment. *See Creech II*. This appeal by plaintiffs arises from the resulting jury verdict in favor of Dr. Melnik on the grounds that plaintiffs breached their implied contract not to sue her.[1]

Plaintiffs challenge the jury's verdict of breach of an implied contract on the grounds that (1) no evidence showed that Mr. Pulley had authority to contract on behalf of the minor with Dr. Melnik, and (2) no evidence showed that a court reviewed and approved the alleged contract on behalf of the minor.

[1] Preliminarily, we address the issue of whether the earlier decisions in *Creech I* and *II* set forth a doctrine of law that decides the issues in this appeal—whether Mr. Pulley had authority to contract on behalf of the minor, and whether the alleged contract on behalf of the minor required court approval. We conclude that they do not.

> As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case . . . .

*Tennessee-Carolina Transp. Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974); *see also North Carolina Nat. Bank v. Virginia Carolina Builders*, 307 N.C. 563, 299 S.E.2d 629 (1983); *Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 41, 493 S.E.2d 460, 463 (1997); *Weston v. Carolina Medicorp, Inc.*, 113 N.C. App. 415, 417, 438 S.E.2d 751, 753 (1994). Under the law of the case doctrine, an appellate court ruling on a question governs the resolution of that question both in subsequent proceedings in the trial court and on a

---

1. The jury found against Dr. Melnik on her alternative defense of equitable estoppel; that issue is not before us.

subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal. *See Weston v. Carolina Medicorp, Inc.*, 113 N.C. App. at 417, 438 S.E.2d at 753. However, the law of the case doctrine does not apply to *dicta*, but only to points actually presented and necessary for the determination of the case. *See Southland Assoc. Realtors, Inc. v. Miner*, 73 N.C. App. 319, 321, 326 S.E.2d 107, 108 (1985) (holding that the doctrine did not apply because the prior appellate decision established "only that plaintiff was not entitled to summary judgment; it did not establish that plaintiff was not entitled to present its evidence with regard to the disputed issues.").

In this case, neither *Creech I* nor *Creech II* addressed issues concerning the attorney's authority to act on behalf of the minor, and whether the contract made on behalf of the minor required court approval. Indeed, in *Creech I*, this Court observed that "[s]ince neither party addresses the question of whether the attorney under the facts of this case could lawfully bind his clients to a contract, we need not reach that issue in this appeal." *Creech I*, 124 N.C. App. at 505, 477 S.E.2d at 682. Likewise, *Creech II* did not address whether the attorney had authority to enter into a contract with Dr. Melnik and whether the contract on behalf of a minor would require court approval. As in *Southland*, the sole question before our Supreme Court in *Creech II* was whether the pleadings, depositions, admissions and affidavits contained in the record proper showed that there were genuine issues of material fact. *See Creech II.* The case was not before our Supreme Court for a decision on the merits; accordingly as in *Southland*, the doctrine of law of the case does not preclude our consideration of these issues.[2] We therefore hold that the prior appellate decisions of *Creech I* and *II* established only that Dr. Melnik was not entitled to summary judgment; they did not establish whether Mr. Pulley had authority to contract on behalf of the minor,

---

2. Astutely, during the *Creech II* oral arguments, Justice Whichard recognized the issue of whether court approval was required in a minor's covenant not to sue:

JUSTICE WHICHARD: We're dealing with a minor here too which makes this a much more troubling case to me. You would—Mr. Pulley could not have settled this case without court approval.

MR. BYRD: No, sir, he could not.

JUSTICE WHICHARD: So how can he contract it away without some sort of court approval? And yet in the posture the case is in—tell me if I'm right—it looks to me like the very best thing this court could do for you would be to send it back for a trial on issues of fact . . . .

nor did they uphold the validity of a contract made on behalf of a minor without court approval.

[2] Although plaintiff brings forth two issues, we need only address the one that disposes of this appeal: Whether court approval was required to find a valid contract involving a minor. We answer, yes; the failure to present proof of court approval of a contract on behalf of a minor is fatal at any stage of a proceeding seeking to enforce such a contract. Since the record shows no evidence that the "implied" contract with the subject minor was approved by a court, we must reverse the jury verdict finding a breach of an implied contract not to sue.

Historically, courts have long provided special protections for minors in general contractual relationships. "Recognized at common law as early as 1292, and little changed in this century, the . . . infancy doctrine allows the minor to avoid or disaffirm contracts . . . The common law's view has traditionally been that children are naive and unsophisticated, especially in the marketplace." Robert E. Richards, *Children and the Recorded-Message Industry: The Need for a New Doctrine*, 72 VA. L.R. 1325, 1332-33 (1986). "From our earliest history infants have been regarded as entitled to the especial protection of the State and as wards of the court. In a sense courts . . . are the supreme guardians of all infants and are charged with the protection alike of their personal and property rights." *Latta v. Trustees of Gen. Assembly of Presbyterian Church in United States*, 213 N.C. 462, 469, 196 S.E. 862, 866 (1938). Consequently, the judiciary's role in protecting the "interest of infants is broad, comprehensive and plenary. In all suits or legal proceedings of whatever nature, in which the personal or property rights of a minor are involved, the protective powers of a court . . . may be invoked whenever it becomes necessary to fully protect such rights." *Id.*

The general rule is that the contract of an infant is not binding on him. *See Freeman v. Bridger*, 49 N.C. 1 (1856).

[S]o careful is the law to guard the rights of infants, and to protect them against hasty, irregular and indiscreet judicial action. Infants are, in many cases, the wards of the courts, and these forms, enacted as safeguards thrown around the helpless, who are often the victims of the crafty, are enforced as being mandatory, and not directory only. Those who venture to act in defiance of them must take the risk of their action being declared void, or set aside.

*Moore v. Gidney,* 75 N.C. 34, 39 (1876). " 'By the fifteenth century it seems to have been well settled that an infant's bargain was in general void at his election (that is voidable), and also that he was liable for necessaries.' " *Gastonia Personnel Corp. v. Rogers,* 276 N.C. 279, 281, 172 S.E.2d 19, 20 (1970) (quoting 2 Williston, Contracts § 223 3rd ed. 1959). " 'The law considers his contract a voidable one on account of its tender solicitude for his rights and the fear that he may be imposed upon in his bargain.' " *Weeks v. Wilkins,* 134 N.C. 516, 522, 47 S.E. 24, 26 (1904) (quoting Devlin on Deeds, Vol. I, sec. 91).

"Consequently, ancient common-law rules regarding an infant's lack of contractual capacity have endured in the United States and in North Carolina with considerable vitality." John N. Hutson, Jr. & Scott A. Miskimon, North Carolina Contract Law § 1-26, 30 (2001).[3] In North Carolina, agreements or contracts, except for those dealing with necessities and those authorized by statute, "are voidable at the election of the infant and may be disaffirmed by the infant during minority or within a reasonable time of reaching majority." *Bobby Floars Toyota, Inc. v. Smith,* 48 N.C. App. 580, 582, 269 S.E.2d 320 (1980). *See also Jackson v. Beard,* 162 N.C. 105, 78 S.E. 6 (1913). "[W]hat is a reasonable time depends upon the circumstances of each case, no hard-and-fast rule regarding precise time limits being capable of definition." *Nationwide Mut. Ins. Co. v. Chantos,* 25 N.C. App. 482, 490, 214 S.E.2d 438, 444, *disc. review denied,* 287 N.C. 465, 215 S.E.2d 624 (1975).

Our courts continue to afford special safeguards to minors and incompetents when it comes to contracting away their interests. The rationale for allowing minors to avoid contracts is that until they are adults "they are not supposed to have the mental capacity to make them." *Nationwide Mut. Ins. Co. v. Chantos,* 293 N.C. 431, 443, 238 S.E.2d 597, 605 (1977). The avoidability of the contract can be asserted defensively when an adult brings an action to enforce the contract or offensively based on his infancy, when the infant is, for whatever reason, dissatisfied. *See* Hutson, *supra,* § 1-26 at 30-31. However, "if the infant elects to enforce the contract it is binding on the other party." *Id.* § 1-25 at 29. "Because of the need to protect chil-

---

3. "Under the common-law, persons, whether male or female, are classified and referred to as Infants until they attain the age of twenty-one years." *Gastonia Personnel Corp. v. Rogers,* 276 N.C. 279, 281, 172 S.E.2d 19, 20 (1970). The General Assembly enacted Chapter 585 of the Session Laws of 1971 which abrogated the common law definition of minor. A minor under N.C. Gen. Stat. § 48A-1 (1999) "is any person who has not reached the age of 18 years."

dren, in a contractual dispute between an infant and an adult, the law comes down squarely on the side of the infant." *Id.*

In contrast, when competent adults are conducting business, a binding contract is created by an agreement involving mutual assent of two parties who are in possession of legal capacity, where the agreement consists of an exchange of legal consideration (mutuality of obligation). Richard A. Lord, Williston on Contracts § 1:20 (4th ed. 1993). "Infancy, fraud, mistake, duress and some kinds of illegality all afford grounds for rescinding or refusing to perform a contract." *Id.* However, because a minor lacks legal capacity there cannot be a valid contract in most transactions, unless it is for necessaries or the statutes make the contract valid. *See Nationwide Mutual Ins. Co. v. Chantos,* 293 N.C. at 443, 238 S.E.2d at 605.

Therefore, courts have "inherent authority over the property of infants and will exercise this jurisdiction whenever necessary to preserve and protect children's estates and interests. The court looks closely into contracts or settlements materially affecting the rights of infants [.]" *Sigmund Sternberger Foundation, Inc. v. Tannenbaum,* 273 N.C. 658, 674, 161 S.E.2d 116, 128 (1968). Thus, in addressing the impropriety of a covenant not to sue on behalf of a minor, our Supreme Court in *Sell v. Hotchkiss,* 264 N.C. 185, 191, 141 S.E.2d 259, 264 (1965), stated:

Although this point was not addressed in the briefs, we note that, irrespective of what construction is put on the covenant signed by Marguerite M. Hotchkiss, mother and natural guardian of plaintiff Barbara Sell, minor, defendant could not use it as a defense to the minor's suit against such a covenant as the one we have here. The settlement of an infant's tort claim became effective and binding upon him only upon judicial examination and adjudication.

*Id.* (citations omitted); *see also, Gillikin v. Gillikin,* 252 N.C. 1, 113 S.E.2d 38 (1960) (holding that a minor could not be bound by a compromise or settlement of his personal injury claim except in a manner provided by law); *Payseur v. Rudisill,* 15 N.C. App. 57, 63, 189 S.E.2d 562, 566 (holding that "the settlement of a minor's tort claim becom[e]s effective and binding upon him only upon judicial examination and adjudication"), *cert. denied,* 281 N.C. 758, 191 S.E.2d 356 (1972); *In re Reynolds Guardianship,* 206 N.C. 276, 173 S. E. 789, 795 (1934) (holding that "In the case of infant parties, the next friend,

guardian *ad litem*, or guardian cannot consent to a judgment or compromise without the investigation and approval by the Court.").

In the present case, neither the record on appeal nor the brief on behalf of Dr. Melnik points to any evidence showing that the alleged implied contract on behalf of the minor was reviewed or approved by the trial court. Since it is well established in North Carolina that a covenant not to sue negotiated for a minor is invalid without investigation and approval by the trial court, we must reverse the jury's finding of a contract on behalf of the minor not to sue Dr. Melnik, and remand for a new trial.

Reversed and remanded.

Judges TIMMONS-GOODSON and HUDSON concur.