***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On July 23, 1973, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On July 23, 1973, an employer-employee relationship existed between Plaintiff and Defendant-Employer, and Liberty Mutual Insurance Company was the compensation carrier on the risk.
3. On July 23, 1973, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer. As a result of the accident, Plaintiff sustained a complete and permanent loss of use of both legs.
4. Plaintiff's average weekly wage is $93.66, which produces a compensation rate of $62.43.
5. Defendants paid Plaintiff disability compensation beginning July 24, 1973. Subject to verification, Defendants terminated disability compensation payments on December 10, 1976 pursuant to the parties' Rehabilitation Agreement, which was approved by the Industrial Commission on June 21, 1976.
6. Defendants have paid Plaintiff no disability compensation since December 10, 1976.
7. The following documentary exhibits are stipulated into evidence by the parties:
 (a) Industrial Commission forms, orders and agreements.
 (b) Letter from Plaintiff's counsel to Melissa Rich, M.D., dated September 10, 2010, bearing Dr. Rich's September 15, 2010 response.
 (c) Correspondence between Plaintiff and Defendants concerning payment for Plaintiff's colonoscopy.
 (d) Defendants' answers to Plaintiff's interrogatories and Rule 601 discovery request.
 *********** *Page 3 ISSUES
1. Whether Plaintiff is conclusively presumed to be permanently and totally disabled?
2. Whether the parties' Rehabilitation Agreement should be set aside pursuant to N.C. Gen. Stat. § 97-17 or is it a binding and enforceable contract?
3. Whether Plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was a twenty-two-year-old college student who was working as a construction worker for Defendant-Employer when he sustained the catastrophic injury giving rise to this claim on July 23, 1973.
2. On July 23, 1973, during the course of his employment with Defendant-Employer, Plaintiff fell from a height and sustained head and spinal cord injuries resulting in T-10 level paraplegia, including permanent loss of use of both legs.
3. On October 30, 1973, the parties entered into an Industrial Commission Form 21 Agreement for Compensation for Disability pursuant to which Defendants agreed to pay Plaintiff benefits for total disability at the rate of $62.43 per week for "necessary weeks." The Form 21 Agreement was approved by the Industrial Commission on January 9, 1974.
4. After completing many months of physical and occupational rehabilitation Plaintiff enrolled as a student at the University of North Carolina at Chapel Hill. Plaintiff paid *Page 4 
for his college education through loans and grants, without any vocational rehabilitation assistance from Defendants. In 1976, Plaintiff graduated with degrees in Psychology and English, which enabled him to obtain employment at the Murdoch Center.
5. Plaintiff has been employed at the Murdoch Center since November 8, 1976, earning greater wages than he was earning at the time of the injury.
6. On June 11, 1976, the parties entered into a "Rehabilitation Agreement" which recognized that Plaintiff was "totally disabled due to paralysis . . . and is entitled to compensation and reasonable and necessary medical and hospital care during the remainder of his natural life," but which went on to provide that Defendants could terminate payment of benefits if Plaintiff returned to work. The Rehabilitation Agreement also stated that either party could terminate the "arrangement" at any time, at which point payment of benefits pursuant to N.C. Gen. Stat. § 97-29 would resume. According to the terms of the agreement, Defendants agreed to "waive and forego the provisions of G.S. 97-47" regardless of how long the rehabilitation agreement may continue, such that they "shall never be entitled or have the right to plead the provisions of G.S. 97-47 in bar of Plaintiff's right to compensation and medical payments for life under the provisions of G.S. 97-29."
7. Plaintiff entered into the Rehabilitation Agreement on the advice of his attorney at the time, who has since died.
8. Plaintiff received no money or anything else of value in exchange for entering into the Rehabilitation Agreement. Defendants did not provide Plaintiff with any rehabilitation services under the agreement. *Page 5 
9. On June 21, 1976, Commissioner William Stephenson filed an "Order in Rehabilitation" incorporating the Rehabilitation Agreement by reference and approving it in all respects.
10. Defendants stopped payment of temporary total disability benefits to Plaintiff effective December 10, 1976.
11. On August 6, 2010, Plaintiff underwent a colonoscopy by Dr. Melissa Rich. The colonoscopy was medically necessary to evaluate complications or conditions directly and naturally resulting from Plaintiff's paraplegia.
12. In 1996, in the case of Timmons v. N.C. Department ofTransportation, 123 N.C. App. 456, 473 S.E.2d 356 (1996), the North Carolina Court of Appeals held that an employee who loses the use of both legs is entitled to lifetime indemnity compensation for total and permanent disability pursuant to N.C. Gen. Stat. §§ 97-31(17) and 97-29, even if he returns to work.
13. On July 23, 1973, the date of Plaintiff's injury, the language of N.C. Gen. Stat. §§ 97-31(17) and 97-29 was identical to the language the Court of Appeals interpreted in Timmons.
14. On July 23, 1973 and June 21, 1976, Plaintiff had a vested right to lifetime total and permanent disability compensation, regardless of whether he was able to return to work or otherwise demonstrated wage earning capacity.
15. In 1976, N.C. Gen. Stat. § 97-17 did not include the current provision [§ 97-17(b) (1)] that prohibits the Commission from approving settlement agreements if they are not deemed to be fair and just. However, in 1976 this section of the Act did provide as follows: "Nothing herein contained shall be construed so as to prevent settlements made by and between the *Page 6 
employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Article." Implicit in this provision is the requirement that the agreement be fair and just when evaluated against what the employee would otherwise be entitled to receive under the Act.
16. The Rehabilitation Agreement that was approved by the Industrial Commission in 1976 deprived Plaintiff of his vested right to lifetime total and permanent disability compensation and therefore was not in accordance with the provisions of the Act or fair and just to Plaintiff.
17. Neither the Form 21 Agreement nor the Rehabilitation Agreement was a final award. Therefore, Defendants could not have asserted the provisions of N.C. Gen. Stat. § 97-47 to bar Plaintiff's claim for further compensation due to change of condition, even if it were to be determined that Plaintiff did not have a vested right to lifetime total and permanent disability benefits pursuant to N.C. Gen. Stat. §§ 97-31(17) and 97-29.
18. Plaintiff received no consideration for the purported waiver of his vested right to lifetime indemnity compensation. Moreover, to the extent that either party was permitted to terminate the agreement at any time, any consideration for the agreement was illusory.
19. Defendants' defense of the initial hearing in this matter was not grounded in unfounded litigiousness. The legal issues arising out of the Commission's approval in 1976 of an agreement that permitted Defendants to stop payment of compensation to an employee who had suffered the loss of use of both legs, and the impact of the subsequent decision in Timmons, appeared to be issues of first impression at the Commission.
 ***********
The foregoing Stipulations and Findings of Fact engender the following: *Page 7 
 CONCLUSIONS OF LAW
1. On July 23, 1973, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of the July 23, 1973 accident, Plaintiff permanently lost all use of both legs and therefore had a vested right to payment of compensation for permanent and total disability for his lifetime, regardless of whether he was at some point able to return to work. Timmons v. N.C. Department of Transportation,123 N.C. App. 456, 473 S.E.2d 356 (1996); N.C. Gen. Stat. §§ 97-31(17) and 97-29.
3. The Rehabilitation Agreement that was approved by the Industrial Commission in 1976 must be set aside because it did not provide for payment of compensation in accordance with the provisions of the Act and was therefore neither fair nor just. N.C. Gen. Stat. § 97-17; Kyle v. Holston Group,188 N.C. App. 686, 656 S.E.2d 667 (2008).
4. The Rehabilitation Agreement was not supported by any consideration and was therefore invalid and unenforceable.Creech v. Melnik, 147 N.C. App. 471, 556 S.E.2d 587 (2001).
5. Plaintiff is therefore entitled to permanent and total disability benefits commencing as of December 10, 1976 and continuing for the remainder of his lifetime. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to payment of all reasonable and necessary medical expenses incurred for treatment of the July 23, 1973 injury, including the August 6, 2010 colonoscopy, for the remainder of his lifetime. N.C. Gen. Stat. §§ 97-29 and 97-25.
7. Inasmuch as Defendants' defense of this claim was not grounded in unfounded litigiousness, Plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. *Page 8 Sparks v. Mountain Breeze Restaurant Fish House, Inc.,55 N.C. App. 663, 286 S.E.2d 575 (1982).
8. Inasmuch as Defendants terminated payment of compensation in 1976 pursuant to an order of the Industrial Commission, and because the decision of the Deputy Commissioner was timely appealed, there is no basis to assess a ten percent penalty for late payment pursuant to N.C. Gen. Stat. § 97-18(g).
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Defendants shall pay Plaintiff total disability compensation at the rate of $62.43 per week beginning December 10, 1976 and continuing for the remainder of his lifetime. That compensation which has accrued shall be paid to Plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
2. Defendants shall pay all reasonable and necessary medical expenses incurred by Plaintiff for treatment of the injuries he sustained on July 23, 1973, including the bills incurred for the 2010 colonoscopy, pursuant to the Fee Schedule as by law provided.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded herein is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due Plaintiff shall be deducted from that amount and shall be paid directly to Plaintiff's counsel. Thereafter, Defendants shall send every fourth compensation check directly to Plaintiff's counsel.
This the ___ day of November, 2011. *Page 9 
 S/______________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/__________________ LINDA CHEATHAM COMMISSIONER *Page 1