IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-34

No. COA20-740

Filed 18 January 2022

Rockingham County, 11CRS50300, 11CRS50301, 11CRS50518, 11CRS50124

STATE OF NORTH CAROLINA

v.

FRANK CATALDO

Appeal by Defendant from order entered 17 June 2019 by Judge Edwin G. Wilson, Jr., in Rockingham County Superior Court. Heard in the Court of Appeals 8 September 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sherri Horner Lawrence, for the State-Appellee.*

*North Carolina Prisoner Legal Services, Inc., by Christopher J. Heaney, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1    Defendant appeals an order wherein the trial court concluded that certain sealed child protective services records obtained by the trial court and reviewed in camera during post-conviction discovery were immaterial to Defendant's defense and denied Defendant's request for access to those records and a new trial. Because the trial court impermissibly narrowed the scope of its post-conviction discovery orders, the trial court failed to comply with this Court's mandate in *State v. Cataldo*, 261

N.C. App. 538, 818 S.E.2d 203, WL 4441414 (2018) (unpublished) ("*Cataldo II*"). We reverse the trial court's order and remand for post-conviction discovery orders and an in camera review of the records at issue, in accordance with *Cataldo II*.

## I.    Procedural Background

¶ 2         On 8 May 2013, following a trial, a jury found Defendant guilty of two counts of statutory sex offense and one count of statutory rape of T.B., a minor.[1]  The trial court consolidated the two statutory sex offense convictions and entered judgment, sentencing Defendant to consecutive prison terms of 240 to 297 months for statutory sex offense and 240 to 297 months for statutory rape.  Defendant appealed.  By opinion filed 3 June 2014, this Court found no error in the proceeding below.  *State v. Cataldo*, 234 N.C. App. 329, 762 S.E.2d 2, WL 2507788 (2014) (unpublished) ("*Cataldo I*").

¶ 3         On 7 July 2015, Defendant filed in the trial court a motion for appropriate relief ("MAR") and a motion for post-conviction discovery.  In his MAR, Defendant alleged that he had received ineffective assistance of counsel because his "trial counsel did not request an *in camera* review of DSS records about the complainant's prior allegations of sexual abuse," and "[a]s a result, trial counsel failed to discover exculpatory and impeachment evidence that would have greatly aided [Defendant's]

---

[1] The transcript indicates that the jury found Defendant not guilty of one other count of statutory rape.

defense."

¶ 4        Defendant relied on *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), to support his argument. In *Ritchie*, the defendant was charged with various sex offenses against a minor and sought disclosure of the victim's child protective services records in order to raise a defense. In a plurality decision, the United States Supreme Court stated, "It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57 (citations omitted). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted). The Court concluded that the defendant was "entitled to know whether the [child protective services] file contains information that may have changed the outcome of his trial had it been disclosed[,]" and remanded for an in camera review of the file. *Id.* at 61.

¶ 5        Defendant alleged in his MAR that before accusing Defendant, "T.B. made multiple allegations of sexual abuse against family members that were investigated by DSS and determined to be unfounded," including: "a previous DSS investigation when T.B. was four years old regarding T.B. being sexually abused by her biological father and by a neighbor"; accusations made in 2008 against her biological father for sexually abusing her; and accusations made in 2009 against her uncle for sexually

abusing her. Defendant argued that T.B.'s "history of making false allegations of sexual abuse" was "directly relevant to the credibility of her claims against [Defendant]." Defendant requested the trial court "order post-conviction discovery from the State so he may review the materials, continue post-conviction investigation, and amend his [MAR]."

¶ 6        In his motion for post-conviction discovery, Defendant requested that the trial court order Rockingham Department of Health and Human Services ("Rockingham DHHS") and Guilford County Department of Social Services ("Guilford DSS") "to turn over all records, including medical and mental health records, concerning [T.B.] . . . to the Court for *in camera* review" and order Kim Madden, a psychiatrist who interviewed T.B. in January 2011, "to turn over all notes and/or reports concerning her treatment of T.B. for an *in camera* review," pursuant to *Ritchie*.

¶ 7        The State filed an answer to Defendant's MAR, arguing that it should be denied. Defendant moved to stay a decision on his MAR until he received and had an opportunity to review post-conviction discovery materials. The trial court entered an order on 5 October 2016 denying Defendant's motion to stay a decision on his MAR, his MAR, and his motion for post-conviction discovery.

¶ 8        Defendant filed a petition for writ of certiorari with this Court, seeking review of the 5 October 2016 order. This Court granted certiorari. By opinion filed 18 September 2018, this Court reversed the denials of Defendant's MAR and motion for

post-conviction discovery stating,

> Our precedent, as well as that of *Ritchie,* is clear. The DSS
> records sought by defendant, if in fact they exist, may have
> permitted him to confront and impeach T.B. Defendant
> could not be expected to present a showing of this evidence
> prior to it being released. Its materiality, however, is
> questionable. Do the records exist? Do they show what
> defendant contends? These are matters best suited to an
> *in camera* review. . . .
>
> [W]e hold that [D]efendant made the requisite showing to
> support his motion for post-conviction discovery, and that
> the trial court erred in denying it. We therefore reverse the
> trial court's order, and remand for an *in camera* review of
> the DSS records at issue. Should the trial court determine
> that these records are in fact material, and would have
> changed the outcome of defendant's trial, [D]efendant
> should be granted a new trial.

*Cataldo II*, WL 4441414 at *11-12 (citations omitted).

¶ 9        Upon remand, the State, through Rockingham DHHS, provided the trial court

"with the complete files of Rockingham DHHS, as they pertain to this matter." The

trial court held a hearing on the matter and entered an Order Post-Conviction

Discovery on 18 December 2018 ("Rockingham Order"), in which it found, in relevant

part:

> 9.        This Court has reviewed the records provided by the
> State through Rockingham DHHS and finds that the file
> does not contain any records "at issue" as requested by
> [D]efendant in his post-conviction motion for discovery and
> as described by the Court of Appeals. The records at issue
> are records regarding T.B.'s allegations of prior abuse by
> her father from 2000-2001, and again in 2008, and by her

uncle in 2009.

> 10. This Court does find that the records provided contain references to the records at issue, but they do not provide the substance of those records and this Court is unable to complete its *in camera review* as Ordered by the Court of Appeals until it receives the appropriate records.

¶ 10 Upon its findings, the trial court concluded and ordered that Rockingham DHHS "shall make available to this Court the DSS records at issue, specifically records regarding T.B.'s allegations of prior abuse by her father from 2000-2001, and again in 2008, and by her uncle in 2009."

¶ 11 Subsequently, the trial court and the parties exchanged emails regarding the scope of the Rockingham Order. Specifically, Defendant contended that the Rockingham Order's time ranges were too narrow, and that it failed to request both the files related to allegations made by T.B. against Defendant himself or unknown others, and the documents from Kim Madden regarding her treatment of T.B. The trial court declined to modify the Rockingham Order in response to Defendant's contentions, explaining that "the Court of Appeals was clear the remand was for a review of DSS records."

¶ 12 In response to the Rockingham Order, Rockingham DHHS sent a letter to the trial court, indicating that it "did not respond to any abuse, neglect or dependency reports regarding the victim child in 2000-2001, 2008, or 2009." However, the letter advised that the Central Registry "indicate[d] that the Guilford . . . [DSS] responded

to abuse and/or neglect reports on the victim child on or around these time periods." The letter also indicated that Rockingham DHHS investigated a situation regarding T.B. in 2004, during which Guilford DSS had provided it with records from its involvement with the family in 2001 and 2002. Copies of the Guilford DSS records from 2001 and 2002 were attached to the letter.

¶ 13        The trial court entered an Order Post-Conviction Discovery Guilford DSS on 18 February 2019 ("Guilford Order"), finding in part:

> This Court has reviewed the Guilford County DSS records provided by [Rockingham] DHHS and finds they do not contain any records described by the Court of Appeals regarding T.B.'s allegations of prior abuse in 2008 or 2009. This Court is unable to complete its *in camera review* as Ordered by the Court of Appeals until it receives the appropriate records.

¶ 14        The trial court thus ordered Guilford DSS to "make available to this [c]ourt the DSS records at issue, specifically records regarding T.B.'s allegations of prior abuse from 2000-2001, 2008, and 2009."

¶ 15        The trial court entered an Order on Remand Defendant's Motion for Post-Conviction Discovery ("Order on Remand") on 17 June 2019. The trial court found, in pertinent part, that it had "conducted an *in camera* review of the records provided by [Guilford] DSS as directed by the Court of Appeals and observed that the records contained documentation related to allegations of prior abuse occurring on or around the dates noted in the Opinion of the Court of Appeals."

The trial court concluded, in relevant part:

> 23. Having conducted an *in camera* review of the records provided by [Guilford DSS], this Court concludes that, in the context of the entire record, there is not a reasonable probability that the outcome of defendant's trial would have been different had he been able to access these records. As such, the records of T.B.'s prior allegations of abuse are not material to the defense.
>
> 24. Defendant, therefore, is not entitled to have access to the records of T.B.'s prior allegations of abuse and is not entitled to a new trial.

The trial court denied Defendant's Motion for Post-Conviction Discovery and ordered the records reviewed be sealed and placed in the record for appellate review, in accordance with *State v. Hardy*, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977).

Defendant filed a petition for writ of certiorari with this Court on 29 May 2020. This Court allowed the petition "for purposes of reviewing Judge Edwin G. Wilson, Jr.'s, 17 June 2019 order denying [Defendant's] motion for post-conviction discovery upon the *in camera* review ordered by this Court in [*Cataldo II*]."

## II.   Discussion

### A. Scope of post-conviction discovery orders

Defendant argues that the trial court erred on remand by impermissibly narrowing the scope of its post-conviction discovery orders to Rockingham DHHS and Guilford DSS, such that the trial court failed to conduct a sufficient in camera review of relevant records, as mandated by this Court in *Cataldo II*. We agree.

¶ 20    "The general rule is that an inferior court must follow the mandate of an appellate court in a case without variation or departure." *Condellone v. Condellone*, 137 N.C. App. 547, 551, 528 S.E.2d 639, 642 (2000) (quoting *Metts v. Piver*, 102 N.C. App. 98, 100, 401 S.E.2d 407, 408 (1991)); *see, e.g.*, *Creech v. Melnik*, 147 N.C. App. 471, 473-74, 556 S.E.2d 587, 589 (2001) ("Under the law of the case doctrine, an appellate court ruling on a question governs the resolution of that question both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal.").

¶ 21    In the Factual and Procedural Background of *Cataldo II*, this Court explained that Defendant had filed an MAR on 7 July 2015 in which

> Defendant alleged that T.B.'s father had been accused of sexually abusing her from 2000 to 2001, and again in 2008, and that she had accused her uncle of sexually abusing her in 2009. He argued that he received ineffective assistance of counsel at trial, due to (1) counsel's failure to subpoena T.B.'s DSS records regarding prior claims of abuse; (2) counsel's failure to cross-examine T.B.'s therapist regarding prior claims of abuse; and (3) counsel's failure to impeach T.B. regarding her prior claims of abuse. That same day, [D]efendant filed a motion for post-conviction discovery, seeking an *in camera* review of T.B.'s DSS records regarding prior claims of abuse.

*Cataldo II*, WL 4441414 at *2. This Court then addressed the trial court's denial of Defendant's MAR as follows:

> [D]efendant contends that the trial court erred in denying his MAR because he made a plausible showing that material, favorable DSS records exist. We agree.
>
> . . . .
>
> Our precedent in [*State v. Taylor*, 327 N.C. 147, 393 S.E.2d 801 (1990), and *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977)], as well as that of *Ritchie*, is clear. The DSS records sought by [D]efendant, if in fact they exist, may have permitted him to confront and impeach T.B. Defendant could not be expected to present a showing of this evidence prior to it being released. Its materiality, however, is questionable. Do the records exist? Do they show what defendant contends? These are matters best suited to an *in camera* review. *See Ritchie*, 480 U.S. at 61, 94 L. Ed. 2d at 60 (concluding that *in camera* review by the trial court would serve the defendant's interest while also protecting the confidentiality of individuals involved in child-abuse investigations).
>
> In accordance with all of this precedent, we hold that [D]efendant made the requisite showing to support his motion for post-conviction discovery, and that the trial court erred in denying it. We therefore reverse the trial court's order, and remand for an *in camera* review of the DSS records at issue. Should the trial court determine that these records are in fact material, and would have changed the outcome of [D]efendant's trial, [D]efendant should be granted a new trial.

*Cataldo II*, WL 4441414 at *3-4.

¶ 22        At issue is the proper scope of "the DSS records at issue" in this Court's directive to the trial court. *Id.* at *5.

¶ 23        Defendant argues that his original request was for Rockingham DHHS and Guilford DSS to produce "all records, including medical and mental health records,

concerning [T.B.] . . . for *in camera* review[,]" and this request "defined the requisite scope of the DSS records at issue on remand." Thus, Defendant argues, the trial court erred in limiting the scope of review to the specified time periods and excluding any records of Rockingham DHHS's investigation in 2004, any allegations by T.B. against Defendant in 2006 or 2007, and any other relevant social services records.

¶ 24 In its Rockingham Order, the trial court found and concluded that "[t]he records at issue are records regarding T.B.'s allegations of prior abuse by her father from 2000-2001, and again in 2008, and by her uncle in 2009." Similarly, in its Guilford Order, the trial court concluded "the DSS records at issue" are "records regarding T.B.'s allegations of prior abuse from 2000-2001, 2008, and 2009." In its Order on Remand, the trial court noted the limited scope of its review, finding that "[i]n response to the Order of the Court of Appeals, this [c]ourt ordered [Rockingham] DHHS to provide the [c]ourt with the records described by the Court of Appeals, specifically regarding T.B.'s allegations of prior abuse in 2000-2001, 2008, and 2009." The trial court also found that it "ordered [Guilford] DSS to make available to [the court] the DSS records at issue, specifically those related to T.B.'s allegations of prior abuse from 2000-2001, 2008, and 2009[.]"

¶ 25 In *Cataldo II*, as quoted above, this Court mentioned these specific time periods in the Factual and Procedural Background of the opinion, describing specific allegations of abuse asserted in Defendant's MAR as grounds for Defendant's

ineffective assistance of counsel claims. This Court, with a general reference to T.B.'s prior allegations of sexual abuse investigated by social services, then summarized Defendant's argument on appeal as "he was entitled to an *in camera* review and the disclosure of these DSS documents proving that T.B. has falsely accused others of sexual abuse." *Cataldo II*, WL 4441414 at *2-3. However, in describing Defendant's motion for post-conviction discovery – the main issue ultimately decided in *Cataldo II* – this Court described the motion as "seeking an *in camera* review of T.B.'s DSS records regarding prior claims of abuse." *Id.* at *2.

¶ 26 In his motion for post-conviction discovery, while Defendant referenced allegations from the specific time periods, Defendant's request for discovery of DSS records was not limited to those time periods. Defendant argued that he "should be granted an *in camera* review of all DSS records concerning T.B." and requested the trial court order Rockingham DHHS and Guilford DSS "to turn over all records, including medical and mental health records, concerning [T.B.] to the [c]ourt for *in camera* review[.]"

¶ 27 In support of its holding that "[D]efendant made the requisite showing to support his motion for post-conviction discovery, and that the trial court erred in denying it[,]" this Court reasoned that "[t]he DSS records sought by [D]efendant, if in fact they exist, may have permitted him to confront and impeach T.B. Defendant could not be expected to present a showing of this evidence prior to it being released."

*Id.* at *4-5. This reasoning applies to all DSS records sought by Defendant in his motion for post-conviction discovery regarding T.B.'s prior allegations of sexual abuse, not just those specific instances identified by Defendant without access to the records. The in camera review is designed to safeguard Defendant's due process right to evidence favorable and material to his guilt or punishment. *Ritchie*, 480 U.S. at 57.

¶ 28        Based on Defendant's motion for post-conviction discovery seeking all Rockingham DHHS and Guilford County DSS records regarding T.B. and this Court's language in *Cataldo II* ordering in camera review of the DSS records at issue, the trial court erred by impermissibly narrowing the scope of its post-conviction discovery orders to Rockingham DHHS and Guilford DSS, such that the trial court failed to conduct a sufficient in camera review of relevant records, as mandated by this Court in *Cataldo II*.

¶ 29        Accordingly, we reverse the trial court's order and remand for post-conviction discovery orders of proper scope and in camera review of "T.B.'s DSS records regarding prior claims of abuse." *Cataldo II*, WL 4441414 at *2.

## B. In camera review on appeal

¶ 30        Defendant also asks this Court to review the social services records already reviewed by the trial court to determine whether they contain exculpatory information that would be favorable and material to his defense. We decline to review

the records until all of the relevant records have been requested and reviewed in camera by the trial court. In light of our holding, we need not reach any remaining arguments.[2]

### III.    Conclusion

¶ 31    The trial court erred when it impermissibly narrowed the scope of its orders to Rockingham DHHS and Guilford DSS to include only records regarding allegations of events during certain time periods and against certain persons. Accordingly, we reverse the trial court's order and remand to the trial court with instructions to order Rockingham DHHS and Guilford DSS to produce T.B.'s social services records "regarding prior claims of abuse." *Id.*

¶ 32    Upon receipt and in camera review of the records, should the trial court determine that the records are in fact material, Defendant should be granted a new trial. *See id.* at \*5.

REVERSED AND REMANDED.

Judge JACKSON concurs.

Judge ARROWOOD dissents by separate opinion.

---

[2] Defendant also argues that he is entitled to post-conviction discovery under N.C. Gen. Stat. § 15A-1415(f) and that the trial court erred when it failed to order production of such discovery by the State. We are uncertain what discovery Defendant believes he is entitled to beyond the scope of the issues decided in this opinion.

ARROWOOD, Judge, dissenting.

¶ 33    I respectfully dissent from the majority's holding that the trial court failed to comply with this Court's mandate as set out in *State v. Cataldo*, 261 N.C. App. 538, 818 S.E.2d 203 (2018) (unpublished) ("*Cataldo II*"). I sat on the panel that decided *Cataldo II* and concurred in that opinion, and I believe the trial court complied with *Cataldo II*. I vote to affirm the trial court's order, and respectfully dissent.

¶ 34    In defendant's motion for post-conviction discovery, defendant alleged the following:

> A review of the State's discovery materials contained in the file indicates that there are Department of Social Services records regarding T.B.'s past allegations of sexual abuse against other people that were determined to be unfounded by DSS. Additionally, there are records concerning T.B.'s work with counselor Kim Madden that are likely to contain information helpful for the defense.

Defendant's factual allegations included three subsections, describing T.B.'s allegations of sexual abuse against her father in 2000-2001, again in 2008, and against her uncle in 2009. After highlighting the allegations made during these relevant periods, defendant argued that he "should be granted an *in camera* review of all DSS records concerning T.B."

¶ 35    In *Cataldo II*, this Court addressed defendant's contention "that he was entitled to an *in camera* review and the disclosure of *these DSS documents proving that T.B. had falsely accused others of sexual abuse*." 261 N.C. App. 538, 818 S.E.2d 203 at *8 (emphasis added). After concluding that the trial court erred in denying

defendant's motion for post-conviction discovery, we directed the trial court to conduct "an *in camera* review of the DSS records at issue[,]" and if the trial court "determine[d] that these records [were] in fact material, and would have changed the outcome of defendant's trial," the trial court should grant defendant a new trial. *Id.* at *12.

¶ 36        On 18 December 2018, the trial court entered an order for post-conviction discovery with respect to Rockingham County DSS records. In the order, the trial court made the following relevant findings:

> 9.   This Court has reviewed the records provided by the State through Rockingham DHHS and finds that the file does not contain any records regarding the DSS records "at issue" as requested by defendant in his post-conviction motion for discovery and as described by the Court of Appeals. The records at issue are records regarding T.B.'s allegations of prior abuse by her father from 2000-2001, and again in 2008, and by her uncle in 2009. The allegations of prior abuse are alleged to have occurred in North Carolina.

> 10.  This Court does find that the records provided contain references to the records at issue, but they do not provide the substance of those records and this Court is unable to complete its *in camera review* as Ordered by the Court of Appeals until it receives the appropriate records.

On 18 February 2019, the trial court entered a similar order with respect to Guilford County DSS records, ordering the State to furnish complete records for the aforementioned time periods.

¶ 37        The issue on appeal is whether the trial court properly determined the scope of "the DSS records at issue" as directed by this Court in *Cataldo II*. In *Cataldo II*, we answered the question of whether defendant was entitled to an *in camera* review and disclosure of DSS documents "proving that T.B. had falsely accused others of sexual abuse." *Id.* at *8. Although defendant's MAR did request "an *in camera* review of all DSS records concerning T.B.[,]" *Cataldo II* did not grant an *in camera* review of all DSS records concerning T.B., instead limiting the review to documents related to T.B.'s allegations against others. *Id.* This scope aligns with defendant's MAR, which specifically described three sets of allegations in 2000-2001, 2008, and 2009. I believe that the scope of "the DSS records at issue" is limited by the argument presented in defendant's MAR and encompasses DSS records pertaining to T.B.'s allegations against others in 2000-2001, 2008, and 2009.

¶ 38        Notably, the trial court entered two orders requiring the State to furnish additional records prior to completing the *in camera* review. The trial court recognized that the *in camera* review, as mandated by *Cataldo II*, required the production of specific records, but that the *in camera* review was limited in scope. After obtaining the relevant records at issue, the trial court conducted its *in camera* review and properly determined that the records of T.B.'s prior allegations of abuse were not material to the defense. The trial court complied with *Cataldo II* by conducting an *in camera* review of DSS records from these relevant time periods.

I believe the majority has misapprehended the holding and mandate set out in *Cataldo II*, and I vote to affirm the trial court's order.  I respectfully dissent.