IN THE SUPREME COURT OF NORTH CAROLINA

No. 514PA08-3

Filed 19 December 2014

STATE OF NORTH CAROLINA

v.

BOBBY E. BOWDEN

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 747 S.E.2d 617 (2013), affirming an order entered on 8 May 2012 by Judge Gregory A. Weeks in Superior Court, Cumberland County. Heard in the Supreme Court on 15 April 2014.

*Roy Cooper, Attorney General, by Joseph Finarelli, Special Deputy Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Katherine Jane Allen, Assistant Appellate Defender, for defendant-appellee.*

NEWBY, Justice.

In this case we determine whether the various credits defendant Bobby E. Bowden has accumulated during his incarceration must be applied to reduce his sentence of life imprisonment, thereby entitling him to immediate and unconditional release. Our previous holdings regarding the particular class of inmates that includes defendant mandate the conclusion that defendant remains lawfully incarcerated. Accordingly, we reverse the decision of the Court of Appeals.

On 20 December 1975, defendant was convicted of two counts of first-degree murder and one count of armed robbery in Superior Court, Cumberland County, and was later sentenced to death. On direct appeal in 1976, this Court vacated defendant's death sentence and remanded the case with directives to impose life sentences for the two counts of first-degree murder, in accord with *Woodson v. North Carolina,* 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). *State v. Bowden,* 290 N.C. 702, 717, 228 S.E.2d 414, 424 (1976) ("*Bowden I* "). Upon remand of this case to the trial court, defendant received two life sentences to run concurrently.

Notably, defendant is one of a limited group of prisoners, referred to herein as the *Bowden*-class inmates, who committed offenses between 8 April 1974 and 30 June 1978 and received death sentences that were later reduced to life imprisonment. The version of section 14-2 of the North Carolina General Statutes in effect during that time period stated that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison." N.C.G.S. § 14-2 (Supp. 1974). Defendant has accrued various credits while incarcerated, including good time, gain time, and merit time. For *Bowden*-class inmates serving a life sentence, the Department of Correction ("DOC")[1] has applied these credits towards privileges like obtaining a lower custody grade or earlier

---

[1] Effective January 2012, the DOC was renamed the Department of Public Safety. Act of June 4, 2011, ch. 145, sec. 19.1.(a), 2011 N.C. Sess. Laws 253, 535 ("Current Operations and Capital Improvements Appropriations Act of 2011").

parole eligibility, but not towards the calculation of an unconditional release date. *Lovette v. N.C. Dep't of Corr.,* 366 N.C. 471, 737 S.E.2d 737 (per curiam), *cert. denied,* ___ U.S. ___, 134 S. Ct. 394, 187 L. Ed. 2d 168 (2013); *Jones v. Keller*, 364 N.C. 249, 254, 698 S.E.2d 49, 54 (2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2150, 179 L. Ed. 2d 935 (2011). The DOC applied some of defendant's credits towards earlier parole eligibility. The Parole Commission has periodically reviewed defendant's parole eligibility according to law since 1987 and denied defendant parole after each review. In December 2005 defendant filed a petition for writ of habeas corpus *ad subjiciendum*, claiming he was entitled to immediate release from prison because, after applying all his various credits, he had completed his eighty-year life sentence. The trial court denied defendant's petition by an order dated 25 January 2006.

Defendant petitioned the Court of Appeals for review. Treating defendant's petition for writ of certiorari as a motion for appropriate relief, the Court of Appeals vacated the 25 January 2006 order and remanded the matter for an evidentiary hearing under N.C.G.S. § 15A-1420. Following that hearing, the trial court entered an order on 27 August 2007 once again denying defendant's claim for relief.

Defendant appealed the denial of his motion for appropriate relief. The Court of Appeals held that N.C.G.S. § 14-2 (1974) regards defendant's life sentence as an eighty-year sentence "for all purposes" "without any limitation or restriction." *State v. Bowden,* 193 N.C. App. 597, 600-01, 668 S.E.2d 107, 109-10 (2008) ("*Bowden II*"),

*disc. rev. improvidently allowed per curiam*, 363 N.C. 621, 683 S.E.2d 208 (2009). The Court of Appeals reversed the trial court's order and remanded "for a hearing to determine how many sentence reduction credits defendant is eligible to receive and how those credits are to be applied." *Id.* at 601, 668 S.E.2d at 110.

In response to this decision, the DOC calculated projected release dates for Bowden and all other affected inmates and informed those inmates accordingly. Nonetheless, in subsequent litigation involving other *Bowden*-class inmates, the DOC maintained and successfully defended its position that credits had not been and should not be applied towards the unconditional release of *Bowden*-class inmates. *Lovette,* 366 N.C. at 472, 737 S.E.2d at 737; *Jones*, 364 N.C. at 260, 698 S.E.2d at 58; *accord Brown v. N.C. Dep't of Corr.*, 364 N.C. 319, 320, 697 S.E.2d 327 (2010) (per curiam).

In this case, upon remand from the Court of Appeals, the trial court held a hearing and entered an order on 8 May 2012, concluding that defendant had a liberty interest in good time, gain time, and merit time credits that he earned between 1975 and October 2009. The trial court ruled that all of defendant's credits should be applied to his sentence for all purposes, including calculating an unconditional release date. Further, the trial court concluded that the DOC's refusal to apply defendant's credits in this way violated his rights under both the Due Process Clause and the Ex Post Facto Clause of the United States Constitution. Upon applying all of defendant's credits to his eighty-year life sentence, the trial

court determined that defendant had served his entire sentence, that his unconditional release date was 13 October 2009, and that he should have been released on 29 October 2009. The trial court ordered the DOC to release defendant unconditionally by 11 May 2012, but stayed its order the following day pending final appellate review.

On appeal the Court of Appeals affirmed the trial court. *State v. Bowden*, ___ N.C. App. ___, ___, 747 S.E.2d 617, 630 (2013). The Court of Appeals noted, *inter alia*, that the DOC applied credits towards the calculation of defendant's unconditional release date following its decision in *Bowden II* in 2008 and this Court's silence on the merits of that case in 2009. *Id.* at ___, 747 S.E.2d at 619. To support its determination, the Court of Appeals pointed to the presence of the word "applied" in defendant's computerized credit records and informal internal discussions among DOC employees following *Bowden II*. *Id.* at ___, 747 S.E.2d at 621-22. The trial court and the Court of Appeals contended this evidence rendered our previous decision in *Jones*, regarding an otherwise indistinguishable defendant, inapplicable. *Id.* at ___, 747 S.E.2d at 621.

The State sought review in this Court via a petition for writ of certiorari, which we allowed to decide whether our decision in *Jones* controls the outcome of this case. *State v. Bowden*, 367 N.C. 267, 267, 749 S.E.2d 847, 848 (2013). Defendant argues, as did the defendant in *Jones*, that when his various credits are applied to his statutorily defined eighty-year life sentence, he is entitled to

immediate and unconditional release. *See Jones*, 364 N.C. at 252, 698 S.E.2d at 52-53. Again like the defendant in *Jones*, defendant contends the DOC's refusal to apply his credits in this way infringes on his due process protected liberty interests and subjects him to an unconstitutional ex post facto law. *Id.* at 256, 698 S.E.2d at 55.

In all significant ways, the issues presented by this case are indistinguishable from those resolved by our decision in *Jones*. In *Jones* the trial court ruled that Alford Jones, a *Bowden*-class defendant who was convicted of first-degree murder and whose death sentence was subsequently reduced to life imprisonment, was entitled to receive credits for all purposes and to have those credits applied towards his unconditional release. *Id.* at 251, 698 S.E.2d at 52. Jones also argued that after *Bowden II*, the DOC applied his credits in calculating an unconditional release date of which he was informed. This Court rejected that reasoning and concluded that the DOC possessed "statutorily and constitutionally permissible authority" to apply Jones's credits "for limited purposes that did not include calculating an unconditional release date." *Id.* at 252, 698 S.E.2d at 53.

Though we noted that the DOC does not have unfettered discretion, we recognized that the General Assembly has delegated certain authority to the DOC to govern prisoners and administer criminal sentences. *Id.* at 252-53, 698 S.E.2d at 53; *see* N.C.G.S. § 148-11 (1974) ("The Commissioner [of Correction] shall propose rules and regulations for the government of the State prison system, which shall

become effective when approved by the Commission of Correction."); *id.* § 148-11 (2013) ("The Secretary shall adopt rules for the government of the State prison system."); *see also id.* § 148-4 (1974) ("The Commissioner of Correction shall have control and custody of all prisoners serving sentence in the State prison system, and such prisoners shall be subject to all the rules and regulations legally adopted for the government thereof."); *id.* § 148-4 (2013) (same with exception of substituting the Secretary of Public Safety for the Commissioner of Correction); *id.* § 148-13 (1974) (stating that the Department's regulations include provisions governing "rewards and privileges applicable to the several classifications of prisoners as an inducement to good conduct [and] allowances of time for good behavior."); *id.* § 148-13 (2013) (authorizing the Secretary of Public Safety to "issue regulations regarding . . . the privileges and restrictions applicable to each custody grade"). The application of credits earned during incarceration falls under the "strictly administrative" discretion allotted to the DOC and remains "outside the purview of the courts." *Jones*, 364 N.C. at 255, 698 S.E.2d at 55 (citation and quotation marks omitted). Recognizing this statutory delegation of administrative discretion, this Court in *Jones* deferred to the DOC's policies for governing prisoners so long as those policies remained within constitutional bounds. *Id.* at 256-57, 698 S.E.2d at 55-56. We noted that the DOC had never applied these credits towards the calculation of an unconditional release date for a *Bowden*-class inmate. *Id.* at 254-55, 698 S.E.2d at 54-55.

The DOC's exercise of authority in *Jones* did not exceed constitutional limits despite the defendant's claims that, *inter alia*, the DOC's actions violated his due process rights and subjected him to an unconstitutional ex post facto law. *Id.* at 256, 698 S.E.2d at 55. This Court concluded that a prisoner's *de minimis* liberty interest in having his various credits applied towards his desired purpose of unconditional release must be balanced against the State's corresponding and compelling interest in public safety. *Id.* at 256-58, 698 S.E.2d at 55-56. As such, the DOC may apply those credits for limited purposes, such as earlier parole eligibility, but decline to reduce the remaining sentence. *Id.* at 254-55, 257, 698 S.E.2d at 54, 56. Ultimately, we determined that because he had "no State-created right to have his time credits used to calculate his eligibility for unconditional release[,] Jones's due process rights ha[d] not been violated." *Id.* at 257, 698 S.E.2d at 56. Likewise, the DOC's policy to refuse to apply these credits towards calculating an unconditional release date for a *Bowden*-class inmate serving a life sentence did not constitute an ex post facto violation. *Id.* at 259, 698 S.E.2d at 57.

In *Jones* we thoroughly reviewed and rejected the same arguments advanced by defendant here—that a *Bowden*-class inmate serving a life sentence is entitled to have his credits applied for all purposes, including immediate and unconditional release. We have since extended our holding in *Jones* to other *Bowden*-class defendants to deny them the application of credits towards an unconditional release date. *Lovette*, 366 N.C. at 472, 737 S.E.2d at 737 (holding that *Bowden*-class

inmates convicted of second-degree murder and second-degree burglary were not entitled to have their credits applied towards calculating an unconditional release date); *Brown*, 364 N.C. at 320, 697 S.E.2d at 327 (holding that a *Bowden*-class inmate convicted of first-degree felony murder was not entitled to have her credits applied towards calculating an unconditional release date). In erroneously distinguishing *Jones* from the case at hand, the trial court and the Court of Appeals placed great emphasis on the DOC's attempt to interpret and implement the Court of Appeals' ruling in *Bowden II* by calculating a proposed release date. But defendant has no State-created right to his unconditional release based on an agency's good faith interpretation of, and actions taken to comply with, a ruling that is later found to be contrary to law. The DOC is charged with ensuring public safety and facilitating the orderly release and supervision of criminal defendants, some of whom have been convicted of the most heinous crimes. We must not force the DOC to reverse its long-standing policies in response to lower court directives that prove inconsistent with those ultimately determined by this Court. To decide otherwise would undermine the State's ability to react to court decisions while still seeking further judicial review.

Defendant here, like Jones, is a member of the *Bowden* class of inmates who are all serving life sentences. The nature and severity of the offenses warranting a life sentence remains the same, and the DOC retains the same implicit discretion in governing these inmates. Moreover, the DOC bears the same significant

responsibility to ensure the release and subsequent supervision of only those prisoners who are prepared to return safely to society. Because defendant's status is indistinguishable from that of the defendant in *Jones*, he must be treated equally under the law. The DOC has never applied these credits towards the calculation of an unconditional release date for a *Bowden*-class inmate. Therefore, we hold that defendant, like Jones, remains lawfully incarcerated and is not entitled to release. The decision of the Court of Appeals affirming the trial court's order to the contrary is reversed.

REVERSED.

Justice HUNTER did not participate in the consideration or decision of this case.

514PA08-3 – State v. Bowden

Justice HUDSON dissenting.

The majority holds that Bobby Bowden must remain incarcerated, despite the unchallenged fact that he has accumulated good time, gain time, and merit time credits which, if applied, would have entitled him to release in October 2009. Here I conclude that, unlike in *Jones v. Keller*, 364 N.C. 249, 698 S.E.2d 49 (2010), *cert. denied*, ___ U.S. ___, 179 L. Ed. 2d 935 (2011), the North Carolina Department of Correction ("DOC") actually applied the prison credits to defendant Bowden's record, and it may not now take those credits away without violating his constitutional rights. Accordingly, I respectfully dissent.

The majority bases its decision primarily on this Court's opinion in *Jones v. Keller*, 364 N.C. 249, 698 S.E.2d 49. However, in my view, *Jones* does not control the outcome of this case. Central to the outcome in *Jones* was the trial court's factual finding, based on competent evidence, that the DOC had not actually applied credits to the defendant's account for purposes of calculating his unconditional release date. If it had done so, clear and binding precedent from the Supreme Court of the United States would have required his release on the date as calculated there. Here, however, the trial court found as fact that credits *had* been applied for this purpose—a factual finding of paramount importance which the majority has largely ignored. Because we are bound on appeal by that finding, just

as we are bound by the Supreme Court's interpretations of federal constitutional law, I conclude that defendant Bowden was entitled to release in October 2009 and that his continued detention violates the United States Constitution.

To begin with, the majority opinion conflicts with binding precedent from the Supreme Court of the United States. As it did in *Jones*, the majority characterizes the liberty interest at stake here as "*de minimis.*" *State v. Bowden* ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2014) ("This Court concluded that a prisoner's *de minimis* liberty interest in having his various credits applied towards his desired purpose of unconditional release must be balanced against the State's corresponding and compelling interest in public safety."); *Jones*, 364 N.C. at 257, 698 S.E.2d at 56 ("Thus, [the defendant's] liberty interest, if any, in having these credits used for the purpose of calculating his date of unconditional release is de minimis, particularly when contrasted with the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public."). From this premise, it would seem naturally to follow that such credits are entitled to little, if any, constitutional protection.

But this is not what the Supreme Court of the United States has said. In *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935 (1974), the Court addressed whether good time credits authorized by state statute were protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 553-58, 41 L. Ed. 2d at 949-52. The Court opined:

We also reject the assertion of the State that whatever may be true of the Due Process Clause [of the Fourteenth Amendment] in general or of other rights protected by that Clause against state infringement, the interest of prisoners in disciplinary procedures is not included in that "liberty" protected by the Fourteenth Amendment. It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. . . . But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 556-57, 41 L. Ed. 2d at 951 (internal citation omitted); [2] *see also Weaver v. Graham*, 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 24 (1981) ("Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the [Ex Post Facto] Clause if it is both retrospective and more onerous than the law in effect on the date of the offense."). So despite the determination of the Supreme Court of the United States that the liberty interest in prison credits "has real substance" protected by the Fourteenth Amendment, the majority here holds that this interest is "*de minimis*." Failing even to mention *Wolff,* the majority concludes

---

[2] *Wolff* may have been abrogated in some respects, but not on this point. In fact, the Supreme Court has recently cited *Wolff* for just this proposition. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 162 L. Ed. 2d 174, 189 (2005) (citing *Wolff*, 418 U.S. at 556-558, 41 L. Ed. 2d at 951-52, for the proposition that there is a "liberty interest in avoiding withdrawal of state-created system of good-time credits")). Accordingly, there is no credible argument that the passage of time, or other doctrinal developments, have lessened our obligation to comply with *Wolff*.

that the State can continue to imprison Bobby Bowden, regardless of the number of credits he has earned to reduce his sentence, without violating the constitutional promise of due process.

The majority here can only justify characterizing defendant Bowden's liberty interest in prison credits as *de minimis*—despite the Supreme Court's explicit holding to the contrary—by inaccurately characterizing the facts found by the trial court regarding what is at stake. As noted, the majority in *Jones* described the defendant's liberty interest as his interest "in having these credits used for the purpose of calculating his date of unconditional release." 364 N.C. at 257, 698 S.E.2d at 56. Today's majority writes similarly. Here, however, the trial court found that the credits *had already* been applied to defendant Bowden's account—and the difference between applying the earned credits, and not applying them, is the difference between freedom and incarceration. Certainly to defendant and others behind bars, this interest is anything but "*de minimis.*"

But my disagreement does not end with the Due Process Clause of the Fourteenth Amendment. Today's majority also ignores the opinion of the Supreme Court of the United States in *Lynce v. Mathis*, 519 U.S. 433, 137 L. Ed. 2d 63 (1997). There, the Court addressed the strikingly comparable question of whether the State of Florida violated the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution when it awarded early release credits to state inmates, then

took those credits away. *See id.* at 435, 440, 137 L. Ed. 2d at 68, 72. The Court

summarized the relevant facts as follows:

> In 1986 petitioner pleaded *nolo contendere* to a charge of attempted murder and received a sentence of 22 years (8,030 days) in prison. In 1992 the Florida Department of Corrections released him from prison based on its determination that he had accumulated five different types of early release credits totaling 5,668 days. Of that total, 1,860 days were "provisional credits" awarded as a result of prison overcrowding. Shortly after petitioner's release, the state attorney general issued an opinion interpreting a 1992 statute as having retroactively canceled all provisional credits awarded to inmates convicted of murder or attempted murder. Petitioner was therefore rearrested and returned to custody. His new release date was set for May 19, 1998.

*Id.* at 435-36, 137 L. Ed. 2d at 68-69 (footnote call number omitted). Presented with

these facts, the Court concluded unanimously that awarding such credits, and then

revoking them, cannot comport with the constitutional protection against ex post

facto punishment. In an opinion written by Justice Stevens, and joined in full by

six other justices, the Court opined that the guarantee against increasing

punishment after the fact "is only one aspect of the broader constitutional protection

against arbitrary changes in the law." *Id.* at 440, 137 L. Ed. 2d at 71. The Court

noted further that this protection also "places limits on the sovereign's ability to use

its lawmaking power to modify bargains it has made with its subjects." *Id.*

Turning to the specific issue at hand, the Court went on to hold that these

dual protections against arbitrariness and compact-breaking apply to sentence

reduction credits created and awarded by the State. It noted that "the operation of the 1992 statute to effect the cancellation of overcrowding credits . . . was clearly retrospective" and reasoned that this retroactivity narrowed the relevant question to "whether those consequences disadvantaged petitioner by increasing his punishment." *Id.* at 441, 137 L. Ed. 2d at 72. The Court then concluded that the petitioner was disadvantaged, and central to this conclusion was the fact that the credits had already been awarded:

> The 1992 statute has unquestionably disadvantaged petitioner because it resulted in his rearrest and prolonged his imprisonment. Unlike [actions taken in a previous case], the 1992 Florida statute did more than simply remove a mechanism that created an *opportunity* for early release for a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of prisoners who were previously eligible—including some, like petitioner, who had actually been released.

*Id.* at 446-47, 137 L. Ed. 2d at 75-76 (emphasis in original). Importantly, it is undisputed that here, like the defendant in *Lynce*, the application of the credits Bobby Bowden has already earned would provide him with no mere "opportunity," but would entitle him to immediate release.

As noted, this majority opinion of the United States Supreme Court was fully endorsed by seven justices. Justice Thomas also wrote a brief opinion, joined by Justice Scalia, concurring in part and concurring in the judgment. Critically, that opinion also confirms the central relevance of the fact that the sentence reduction credits had already been awarded:

Unlike in [a previous case], the increase in petitioner's punishment here was neither "speculative" nor "attenuated." Petitioner pleaded *nolo contendere* to a charge of attempted murder and was duly sentenced. During the period of his confinement, petitioner accumulated release credits under a state statute adopted in response to prison overcrowding. Those credits enabled petitioner to be freed from prison before his sentence (as originally imposed) had run. . . .

Under these narrow circumstances, I agree with the Court that the State's retroactive nullification of petitioner's previously accrued, and then used, release credits violates the Constitution's ban on *ex post facto* lawmaking. . . . The present case involves not merely an effect on the availability of *future* release credits, but the retroactive elimination of credits already earned and used. Accordingly, I concur in part and concur in the judgment.

*Id.* at 450-51, 137 L. Ed. 2d at 77-78 (Thomas & Scalia, JJ., concurring in part and concurring in the judgment) (emphasis in original). In light of this concurring opinion, it is clear that the Court was unanimous on this point. Today's majority thus ignores a recent legal holding that commanded nine votes at the Supreme Court of the United States.

The import of these cases, then, is also clear: The State is under no obligation to create or to award credits that reduce a prisoner's sentence for a crime for which he was lawfully convicted. But once it does so, it cannot then arbitrarily and with no process take those credits back. I would hold that if the State does so, it violates both the Due Process Clause of the Fourteenth Amendment and the Ex

Post Facto Clause of Article I, Section 10 of the United States Constitution. These principles continue to bind this Court and we are not free to disregard them.

In my view, these cases compel this conclusion so clearly that a different outcome would be possible only if the relevant facts were different. In *Jones*, the facts were different. That case, like this one, involved a defendant who was a member of what has been called the *Bowden*-class of inmates. *See, e.g.*, *Jones*, 364 N.C. at 262, 698 S.E.2d at 59 (Newby, J., concurring in the result). And as here, the defendant argued that the State's failure to apply the credits he had earned to calculate his unconditional release date was unconstitutional and violated both his right to due process and his right to be free from ex post facto punishment. *See id.* at 256, 698 S.E.2d at 55 (majority). In *Jones*, the majority rejected both arguments, based in large part on the trial court's finding of fact that "the Department of Correction has never used good time, gain time, or merit time credits in the calculation of unconditional release dates for inmates who received sentences of life imprisonment." *Id.* at 254, 698 S.E.2d at 54 (brackets and quotation marks omitted). With that finding, the defendant in *Jones* missed landing squarely within the holdings of the Supreme Court in *Wolff* and *Lynce*. He was held not to be entitled to release.

Here, the findings of fact are different: Judge Weeks found as fact what Judge Rand did not. For example, Judge Weeks' order granting defendant's Motion for Appropriate Relief included a heading titled "The Department of Correction's

historic application of Mr. Bowden's sentence reduction credits shows: (1) Mr. Bowden received enough credits to unconditionally discharge his sentence on October 13, 2009; and (2) those credits were applied to reduce his unconditional release date." A finding within that subsection of the order states:

> Upon learning that Mr. Bowden was serving a term of years sentence, the Department of Correction applied and awarded all good, gain, and merit time sentence reduction credits previously earned by Mr. Bowden to reduce Mr. Bowden's unconditional release date, resulting in a determination that Mr. Bowden's sentence would expire on October 13, 2009.

A later portion of the order addresses the subsequent retraction of those awarded and applied credits. A heading in the order is explicitly titled "The Department of Correction revoked Mr. Bowden's sentence reduction credits." A finding of fact within that section then provides:

> This Court finds that pursuant to [a memorandum issued by the Secretary of Correction], the Department of Correction revoked Mr. Bowden's sentence reduction credits [including good, gain, and merit time credits], which had previously been awarded to him and applied to reduce his unconditional release date, and recalculated his unconditional release date such that it was reduced only by jail credits. As of the date of the entry of this Order, Mr. Bowden's unconditional release date as posted on the "Offender Public Information" portion of the North Carolina Department of Correction website is July 23, 2055.

(Footnote call number omitted.) These findings are fully supported by competent evidence in the record, as detailed in the trial court's order and noted by the Court

of Appeals. In essence, the State argues that defendant Bowden's credits should not be treated as "applied" because credits accumulated by other inmates were not treated as "applied." In my view, there is no plausible claim of ambiguity regarding what Judge Weeks determined based on the evidence presented in this case. The facts as found by the trial court are straightforward, and those quoted are joined by many others in the trial court's forty-six page order.

Having carefully reviewed the trial court's findings, I cannot avoid the conclusion that these binding facts distinguish this case from *Jones* and place it squarely within the purviews of *Wolff* and *Lynce*. The majority's assertion that "[t]he DOC has never applied these credits toward the calculation of the unconditional release date of a *Bowden*-class inmate" is simply inconsistent with the record here. *Bowden*, ___ N.C. at ___, ___ S.E.2d at ___. Instead of recognizing the long-standing principle that we are bound on appeal by a trial court's findings of fact when those findings are either unchallenged or supported by competent evidence, the majority has in essence grounded its discussion in facts that it wishes the trial court had found, but did not. The majority has, at a minimum, departed significantly from our well-established approach to review of a trial court's factual findings.

Because the binding findings here establish that sentence reduction credits were actually applied to calculate an unconditional release date for defendant, and when that finding was absent in *Jones*, our opinion in *Jones* does not compel the

outcome here. And because I conclude that controlling Supreme Court precedents, applied to those findings of fact, require the release of Bobby Bowden, I would affirm the Court of Appeals and the trial court. I respectfully dissent.

Justice BEASLEY joins in this dissenting opinion.